## JACKSON v. CRISLER.

1. Limitation of Actions—Accrual of Claim—Commencement of
   Period—Damages.

   Except as to claims covered by specific statutory provision, the
      period of the statute of limitations runs from the time the
      claim accrues, and where not expressly covered by statute, the
      claim accrues at the time the wrong upon which the claim is
      based was done regardless of the time when damage results
      (CLS 1961, § 600.5827).

2. Same—Statutes—Accrual of Claims—Damages.

   A claim accrues, by definition in the statute of limitations, at
      the time that the wrong upon which the claim is based was
      done, regardless of the time when damage results (CLS 1961,
      § 600.5827).

3. Same—Statutes—Interpretation—Accrual of Claim.

   Contention of plaintiff who sought damages alleged to have been
      caused by actions of defendant occurring more than 16 years
      prior to the filing of his complaint, that the word "accrual"
      as used in statute of limitations should be construed to mean
      "to grow", with the result that the claim keeps "growing"
      until all consequences of the injury have been suffered, held,
      without merit, where the statute provides that a claim accrues
      at the time the wrong upon which the claim is based was done
      regardless of the time when damage results (CLS 1961,
      § 600.5827).

---

References for Points in Headnotes

[1-3] 34 Am Jur, Limitation of Actions § 113.
[4] 34 Am Jur, Limitation of Actions §§ 137, 158, 159.
[5] 34 Am Jur, Limitation of Actions §§ 158, 159.
[6, 7] 41 Am Jur, Pleading §§ 335, 336, 338, 340–342.
[8] 34 Am Jur, Limitation of Actions § 113; 41 Am Jur, Pleading
   § 336.

4. SAME—MUTUAL AND OPEN ACCOUNTS CURRENT.

> Statute relating to limitation of actions on mutual and open accounts current which provides that a claim respecting such account accrues at the time of the last item proved in the account is inapplicable to action for alleged invasion of privacy and interference with economic and marriage opportunities (CLS 1961, § 600.5827).

5. SAME—MUTUAL AND OPEN ACCOUNTS CURRENT—ACCRUAL OF CLAIM.

> Action for damages as a result of a wrongful denial of plaintiff's right to play football at the University of Michigan 16 years prior to the filing of his complaint, in which continuing damages flowing from the original wrong were alleged, *held*, not like a claim based upon a mutual and open account current, in which the cause of action "accrues" at the time of the last item proved in the account, with respect to application of the statute of limitations (CLS 1961, §§ 600.5827, 600.5831).

6. JUDGMENT — SUMMARY JUDGMENT — AFFIDAVITS — ACCELERATED JUDGMENT — LIMITATION OF ACTIONS.

> Filing of affidavits in support of a motion for summary judgment does not preclude a party from also moving for accelerated judgment on the ground that plaintiff's claim is barred by the statute of limitations (GCR 1963, 116, 117).

7. SAME—SUMMARY JUDGMENT—ACCELERATED JUDGMENT.

> The fact that a party seeks relief by way of summary judgment does not preclude the seeking of simultaneous relief by way of accelerated judgment (GCR 1963, 116, 117).

8. SAME—ACCELERATED JUDGMENT—LIMITATION OF ACTIONS—ACCRUAL OF CLAIM.

> Accelerated judgment for defendants in action by plaintiff to recover damages for injuries as a result of alleged wrongful and fraudulent acts of defendants in conspiring to prevent plaintiff from playing varsity football at the University of Michigan from 1948 to 1950, based upon a finding that his claims were barred by the statute of limitations, *held*, proper, where plaintiff's complaint showed that alleged wrongful acts complained of had occurred more than 6 years prior to filing of complaint, since action was clearly barred by the statute regardless of whether considered as one for injury to persons or property to which the 6-year limitation was applicable, or one for which a shorter period is otherwise specified, since plaintiff's claim accrued at the time of the act complained of regardless of when damage occurred (CLS 1961, §§ 600.5805, 600.5813, 600.5827; GCR 1963, 116).

Appeal from Wayne; Kaufman (Charles), J. Submitted Division 1 March 8, 1967, at Detroit. (Docket No. 2,500.) Decided March 25, 1968.

Complaint by James D. Jackson against Fritz Crisler and Bennie Oosterbaan for damages for wrongfully preventing plaintiff from playing varsity football at the University of Michigan. Accelerated judgment for defendant. Plaintiff appeals. Affirmed.

*James D. Jackson,* in propria persona.

*Ward, Plunkett, Cooney, Rutt & Peacock* (*William D. Booth,* of counsel), for defendants.

Per Curiam. The complaint filed by James D. Jackson against defendants Fritz Crisler and Bennie Oosterbaan charges the defendants wrongfully prevented the plaintiff from playing varsity football at the University of Michigan. The defendants moved for accelerated judgment (GCR 1963, 116), claiming the complaint was barred by the statute of limitations, and for summary judgment (GCR 1963, 117), claiming the complaint failed to state a claim upon which relief could be granted. The order appealed from directed the entry of an "accelerated judgment of no cause for action." We agree with the trial judge that the claims asserted in the complaint are barred by the statute of limitations and, therefore, do not reach the question whether the complaint states a claim upon which relief can be granted.

While we have, for the purpose of passing on defendants' motions, accepted as true the allegations set forth in the complaint, we note the defendants filed affidavits in connection with their motions

denying much of what plaintiff alleges. The substance of the allegations now follows:

Defendant Fritz Crisler was the football coach at the University of Michigan until the football season of 1948 and, at the time of filing the complaint in March, 1966, was the athletic director of the university. Defendant Bennie Oosterbaan was the football coach at the university from 1948 until some date (undesignated) after 1950 and, at the time of filing the complaint, was a member of the university athletic department. The plaintiff was a student at the university from 1946 until 1950.

In 1948 plaintiff was a candidate for the varsity football team. During the spring practice of 1948 plaintiff played left half on the first team, and did not accept an invitation to transfer to UCLA in 1948 as he felt sure he would be given an opportunity to play. However, he did not receive an invitation to return to fall practice in 1948. Plaintiff, nevertheless, at his own expense went to fall practice and, although put on defense against the first team, was not allowed to eat with the team and was denied football tickets. It was at this time, he states, he realized the coaching staff "had feinted during the spring of 1948 to prevent plaintiff from transferring to another school."

The plaintiff charges that the defendants, with others, conspired to disregard and ignore plaintiff's football abilities by telling him he was academically unqualified in spite of written statements from his counselor and the registrar that he was eligible.

Plaintiff recites comments of members of the coaching staff and others indicating his exceptional ability and potential at football. The complaint repeats certain remarks allegedly made by the defendants which, it is claimed, evidenced the defendants' desire to keep plaintiff from playing and their prejudice against him.

Plaintiff further claims that unidentified members of the university football team, coaching staff, students, and alumni influenced and abetted people in Ann Arbor and Detroit to threaten, intimidate, and harass schoolmates and friends of plaintiff. It is claimed that from 1950 to the time of filing the complaint plaintiff's economic opportunities were blocked by total strangers who were influenced by "members of the University of Michigan football team, coaching staff, alumni, and friends." The complaint does not charge that either defendant participated in these acts, and, it will be recalled, it was alleged that Crisler ceased to be a member of the coaching staff in 1948 and that Oosterbaan left the staff at some undesignated time after 1950.

Plaintiff asserts that after graduation he was followed to job opportunities, and that he experienced (in 1952) abuse and unfair assignments at his place of employment. The complaint does not connect the defendants with such allegations of abuse following plaintiff's graduation.

In 1955 plaintiff notified the university president of the denial of opportunities "by bigots who referred to plaintiff's Michigan days." The university president referred plaintiff to Crisler, whom plaintiff met, and who "promised to come down and put a stop to any charade starting at the University of Michigan and emanating from school activities." It is alleged both defendants and others "were aware of the intentional misconduct directed against the plaintiff." Nevertheless, to the time of filing the complaint, neither defendant had taken any action to stop the "vicious conspiracy and charade" started during his days at the university.

Plaintiff further asserts that the consequences to him of the injury done to him at the university in 1947–1949 have continued and are continuing. In an attempt (in 1958) to launch a musical career he

was subjected to "boycotts and vicious slurs." Since his admission to the bar in 1961 his law practice has suffered "because of the prejudice engendered against him by diehards and bigots."

The foregoing allegations are repeated in a separate count for "intentional fraud" wherein it is additionally alleged that the defendants intentionally and fraudulently overlooked and disregarded "plaintiff's prowess on the field by selecting players of lesser ability" in violation of a duty to the plaintiff to be honest and fair in their selection, thereby depriving plaintiff of an opportunity to launch a successful career in varsity and professional football and other opportunities. The plaintiff claims large damages for invasion of privacy and interference with economic and marriage opportunities.

Although plaintiff's complaint alleges presently continuing effects, they are but consequences of injuries known to the plaintiff before 1960 resulting from the wrongs allegedly theretofore done to him. The latest reference in the complaint to an alleged act of either defendant is the claim that Crisler promised to help the plaintiff in 1955 but, nevertheless, neither defendant thereafter and through the time of filing the complaint did anything to correct the injuries done to the plaintiff.

We need not decide whether the allegations contained in the complaint fall within the three-year statutory time limitation applicable to actions to recover damages for injuries to persons and property[1] or the six-year limitation applicable to personal actions for which a shorter period is not otherwise specified.[2]

---

[1] Revised judicature act, PA 1961, No 236, § 5805 (CLS 1961, § 600.5805 [Stat Ann 1962 Rev § 27A.5805]).

[2] Revised judicature act, PA 1961, No 236, § 5813 (CLS 1961, § 600.5813 [Stat Ann 1962 Rev § 27A.5813]).

Section 5827 of the revised judicature act governs the time when each of the limitation provisions begins to run. With exceptions not here pertinent, a claim accrues for the purpose of computing time under the statute of limitations at the time the wrong is done, not when the loss or damage is suffered:

"Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838,[3] and in cases not covered by these sections the claim *accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.*" CLS 1961, § 600.5827 (Stat Ann 1962 Rev § 27A.5827). (Emphasis added.)

We are bound, therefore, to reject plaintiff's argument that we should construe the word "accrue" in the first sentence of the last quoted statutory provision to mean, by reference to its etymology, "to grow," with the result that the claim keeps "growing" until all the consequences of the injury are suffered at which time the claim for the first time is fully matured. The governing provision here is section 5827, which supplies its own definition of "accrue," and we are precluded from formulating another.

For the same reason we reject plaintiff's argument that his cause, and the consequent events alleged in his pleading, are analogous to those dealt with in section 5831 of the revised judicature act,

---

[3] Section 5829 (accrual of a right to make an entry or bring an action to recover land), section 5831 (claims based on mutual and open accounts current), section 5833 (breach of warranty), section 5834 (common carriers), section 5835 (actions based on the 7-year presumption of death), section 5836 (installment contracts), section 5837 (alimony payments), and section 5838 (malpractice by a member of a State licensed profession). There is no section numbered 5830 or 5832.

which (as an express exception to section 5827) provides that a claim respecting "mutual and open accounts current" accrues "at the time of the last item proved in the account." Plaintiff contends his cause did not accrue until the last consequence of the wrongs was suffered. Plaintiff's claim is not based upon mutual and open accounts current, nor does it fall within any of the other exceptions to the general rule prescribed in section 5827.

The time when a wrong is "done" may well depend on the nature of the wrong.[4] However, because we are satisfied that the trespasses and breaches of which the plaintiff complains are all alleged to have occurred before 1960, we do not find it necessary to characterize the allegations in this complaint as to the kinds of claims alleged in order to analyze when the wrongs here alleged were "done." Plaintiff does not allege continuing wrongful acts after March, 1960,[5] but rather continuing damage suffered as the result of acts all of which are alleged to have occurred before 1960.

The denials of the allegations in plaintiff's complaint, by affidavits filed by defendants in connection with their motions, does not, contrary to plaintiff's assertion, entitle the plaintiff to a jury trial merely because such denials indicate there are disputed factual issues. Such denials did not waive defendants' right to assert that plaintiff's claims are barred by the statute of limitations. See *Colling* v. *McGregor* (1906), 144 Mich 651, 653.

Although fraud is alleged, it is not contended that the running of the statute was extended or sus-

---

[4] See 4 Restatement, Torts, § 899c. See, also, *Roche* v. *Blair* (1943), 305 Mich 608, 618, wherein it was held in a suit alleging civil conspiracy that the claim accrues not later than the date the claimant has knowledge of the overt act, rather than on the date of formation of the conspiracy in furtherance of which the act was committed. Compare 16 Am Jur 2d, Conspiracy, § 60.

[5] Compare *Defnet* v. *City of Detroit* (1950), 327 Mich 254, 258.

pended by fraudulent concealment (section 5855 of the revised judicature act) or any of the other matterst set forth in section 5851 *et seq.* of the revised judicature act.

Affirmed. Costs to appellees.

LESINSKI, C. J., and J. H. GILLIS and LEVIN, JJ., concurred.